J-S22001-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JACQUELINE ROHRBAUGH | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL P. ROHRBAUGH | : | No. 1539 MDA 2024 |

Appeal from the Order Entered September 19, 2024
In the Court of Common Pleas of Dauphin County Civil Division at No(s):
2015-CV-4889-DC

BEFORE:   LAZARUS, P.J., BOWES, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:                **FILED NOVEMBER 18, 2025**

Jacqueline Rohrbaugh (Mother) appeals from the final custody order entered in the Court of Common Pleas of Dauphin County by the Honorable Royce L. Morris.  The order awards Appellee, Michael P. Rohrbaugh (Father), sole legal custody and primary physical custody of the parties' children, P.R. (born 6/2012) and G.R. (born 10/2013) (collectively, Children).[1]  The order also awards Mother supervised partial custody of Children, to  take place solely in Dauphin, Cumberland, or Lancaster Counties.  Moreover, the order requires that Mother shall wear an electronic monitoring device, administered by the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The parties are also the biological parents of B.R. (born April 2003) and L.R. (born August 2005).  Because they are no longer minors, they are not involved in this matter.

County Adult Probation Department, when she exercises her visitation with Children in Pennsylvania. **See** Order, 9/19/24, at 1-2. After careful review, we affirm.

Mother and Father were married on September 2, 2000. On June 19, 2015, Mother filed a complaint in divorce against Father seeking, among other things, primary physical custody of Children. **See** Complaint in Divorce, 6/19/15, at 4 (unpaginated). In September 2021, Mother filed petitions to modify custody and relocate Children to California. Despite the pending petitions, Mother moved to California with Children. Following hearings, the court denied Mother's relocation request but permitted Children to remain in California for the summer.[2]

On March 4, 2022, the court entered a final order giving the parties shared legal and physical custody if "Mother's physical residence is within a 25-mile radius of 2200 Parkway West, Harrisburg." Order, 3/4/22. If, however, Mother's physical residence is outside of that 25-mile radius, then Father has primary physical custody and Mother has partial physical custody of Children during summer break. On August 5, 2022, the court entered a supplemental custody order requiring Mother to return Children to Pennsylvania by August 15, 2022. When Mother failed to provide Father documentation regarding Children's travel arrangements and Children were not returned to Pennsylvania by August 15th, Father traveled to California to

_____

[2] Currently, Mother resides in Thousand Oaks, California, and Father resides in Harrisburg, Pennsylvania.

search for them. Unbeknownst to Father, Children had been returned to maternal grandparents' house in Dauphin County sometime between August 17th-18th. Mother was found to be in contempt of three court orders and ordered to pay Father $13,586.47 in costs and attorneys' fees. Mother appealed the contempt finding and our Court affirmed. ***See Rohrbaugh v. Rohrbaugh***, 1645 MDA 2023 (Pa. Super. filed November 18, 2024) (unpublished memorandum decision).

On February 20, 2024, Father filed an emergency petition alleging that Mother had been filing complaints alleging that Father was using illicit drugs in Children's presence. Father claimed that CYS's investigation of Mother's allegations required that he, Children, Father's fiancée, and his fiancée's children be interviewed. During one of those interviews, Father alleged that Children admitted Mother coached them to lie to Children's pediatrician. Due to Father's concern for Children's mental health and well-being, he requested the court suspend Mother's custodial time or direct that her visits be supervised. In addition, Father sought sanctions be imposed upon Mother for placing "the minor children in a harmful and abusive situation." Emergency Petition, 2/20/24, at 6 (unpaginated). The court denied Father's petition on February 20, 2024.

On June 17, 2024, Father filed another emergency petition, seeking sole legal and physical custody, claiming that Mother failed to appear for the parties' scheduled custody exchange the prior weekend and that he was "now unable to communicate with [C]hildren." Petition for Emergency Relief, at 2

(unpaginated). The following day, the court entered an amended order granting Father's petition and directing Mother to return Children immediately to Father, ordering a warrant issue for Mother's arrest if she fails to return Children to Father, temporarily suspending Mother's custodial rights to Children, and scheduling a contempt hearing. *See* Amended Order, 6/18/24.[3]

On June 21, 2024, the court entered an order granting Father sole legal and physical custody of Children, ordering Children be delivered immediately to Father, issuing an arrest warrant for Mother,[4] and requesting the prosecutor take "any lawful action to locate and obtain the return of [C]hildren pursuant to 23 Pa.C.S.[A.] §[§] 5455(a)(1), (2)[,] and (4)." Order, 6/21/24, at 1. As a result of her actions, Mother was charged with two counts of interference with the custody of children. *See* 18 Pa.C.S.A. § 2904.

On June 21, 2024, July 3, 2024, and, again, on July 12, 2024, Mother filed motions for reconsideration of the trial court's June 21, 2024 order, seeking restoration of her custodial rights and/or to vacate or stay the order. On July 16, 2024, the court denied Mother's reconsideration motions and ordered Mother to "resume visitation of the minor children at a supervised facility pending further court order[, but disallowed her from] hav[ing]

---

[3] The court's original order, entered June 17, 2024, incorrectly included one of the parties' other children, who has since "aged out," rather than G.R.

[4] Mother was released from Dauphin County Prison, with conditions, on July 5, 2024. As of the time of this appeal, Mother's criminal matter was still open.

supervised visitation unless and until she complies with th[e c]ourt's bail condition[s,] which include electronic monitoring."[5]  Order, 7/16/24.[6]

Following a hearing, the court entered the instant final custody order on September 19, 2024, granting Father sole legal and primary physical custody and Mother partial supervised physical custody of Children.  Mother's counsel contemporaneously filed a timely notice of appeal and Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[7]  On June 23, 2025, Mother's counsel, Daniel J. Develin, Esquire, filed a motion to withdraw in this

_____

[5] In an order dated July 10, 2024, the court stated that it "would not [] entertain[]" Mother's July 3, 2024 reconsideration motion due to her failure to comply with Dauphin County Local Rule 205.2(a)(3).  Order, 7/10/24.

[6] On September 4, 2024, Father filed a contempt petition against Mother, alleging that she violated the court's May and June 2024 orders "by refusing to communicate with [F]ather or allowing him to speak with [C]hildren . . . and then failed to relinquish [C]hildren to [F]ather for Father's Day and, in fact, absconded to California with [C]hildren [and] refused to tell [F]ather where [C]hildren were altogether."  Petition for Contempt, 9/4/24, at 1-2.  On September 19, 2024, the trial court entered an order holding Mother in contempt, sentencing her to six months of supervised probation, assessing her a $200.00 fine, an ordering her to pay Father $2,500.00 for his counsel fees.  *See* Order, 9/19/24.  Mother has filed an appeal from that contempt order at 1540 MDA 2024.

On September 9, 2024, Mother filed a contempt petition alleging Father had willfully failed to abide by several custody orders.  *See* Contempt Petition, 9/9/24, at 2.  That matter was sent to conciliation to proceed under standard Dauphin County procedure.  *See* Trial Court Opinion, 9/19/24, at 1.

[7] Citing a breakdown in the attorney-client relationship, Mother filed an emergency request for a continuance on June 20, 2025.  On July 2, 2025, we granted Mother's *Pro Se* Emergency Request for Continuance, giving her 14 days to "draft and file important documents that this Court needs in order to properly review this matter."  Order, 7/2/25.

Court claiming that "since [he was] retained by [Mother, they] have reached an irreparable impasse with regard to how to prosecute this matter [and Mother] has advised [counsel] of her intent to represent herself in this matter moving forward." Motion to Withdraw as Counsel, 6/23/25, at 1. On June 27, 2025, Mother filed a response to Attorney Devlin's motion, requesting that this Court deny the motion to withdraw as moot, find Attorney Devlin's motion frivolous as a matter of law, and impose monetary sanctions against Attorney Devlin. *See* Appellant's Opposition to Devlin's Motion to Withdraw, 6/27/25, at 1. On August 5, 2025, we granted counsel's application to withdraw, permitted Mother to proceed *pro se* on appeal, and denied Mother's request to impose sanctions against Attorney Devlin. *See* Order, 7/30/25.

Subsequently, Mother filed an application for relief that included a supplemental Rule 1925(b) statement with three additional issues for our appellate review, claiming that Attorney Devlin had materially misrepresented her position. On August 18, 2015, we entered an order remanding the matter to the trial court "for the purpose of addressing Mother's [] 'supplemental statement of errors' [and to] determine whether it should accept Mother's supplemental issues *nunc pro tunc*." Order, 8/18/25, at 1. The order further provided that if the trial court grants Mother permission to supplement her Rule 1925(b) statement, the trial court shall issue a supplemental Rule 1925(a) opinion. *Id.*

On August 25, 2025, the trial court issued a memorandum and order denying Mother's request to file a supplemental Rule 1925(b) statement *nunc*

*pro tunc*, concluding that Mother's disagreement with the content of prior counsel's Rule 1925(b) statement does not constitute a non-negligent reason or show good cause to permit her to amend her statement eight months later. Memorandum and Order, 8/25/25, at 3 (unpaginated). **See** Pa.R.A.P. 1925(c)(2) ("[u]pon application of the appellant and for good cause shown, an appellate court may remand in a civil case for the filing or service *nunc pro tunc* of a Statement or for amendment or supplementation of a timely filed and served Statement and for a concurrent supplemental opinion"); Pa.R.A.P. 1925, Note ("In general, *nunc pro tunc* relief is allowed only where there has been a breakdown in the process constituting extraordinary circumstances.").[8] Thus, we will address only the following issues that Mother raised in her original Rule 1925(b) statement:

> [(1)] Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in entering the [c]ustody [o]rder of September 19, 2024, since the facts, evidence[,] and record in

---

[8] Mother filed a response to the court's August 25, 2025 memorandum and order asking this Court to "strike" the trial judge's memorandum and order and accept her supplemental issues. We reiterate that Rule 1925 is a tool used by a trial court, not the appellate courts, to explain it rulings on issues raised by a party on appeal. Moreover, as the note to Rule 1925 states, *nunc pro tunc* supplementation of a party's Rule 1925(b) statement is permitted only under extraordinary circumstances. Those are not present here. Additionally, Mother's October 20, 2025 letter to this Court stating that Judge Engle "should not be responding or writing orders related to any of [her] cases" because he recused from the matter on May 8, 2025, is of no moment. Letter, 10/20/25. This appeal was taken from the September 2024 order issued by Judge Engle, well before the ruling on Mother's recusal motion. Thus, Judge Engle is the appropriate jurist to rule upon whether Mother should be permitted to supplement her Rule 1925(b) statement on appeal from his custody order.

- 7 -

this matter do not demonstrate the existence of an emergency which would warrant a modification of the March 4, 2022 [c]ustody [o]rder entered in this matter.

[(2)] Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in entering the [c]ustody [o]rder of September 19, 2024, since the facts, evidence[,] and record in this matter do not warrant the entry of the subject [o]rder of [c]ourt, in light of the custody factors, applicable statutes[,[ and/or case law.

[(3)] Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in entering the [c]ustody [o]rder of September 19, 2024, since the facts, evidence[,] and record in this matter do not warrant awarding [Father] sole legal custody of [C]hildren.

[(4)] Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in entering the [c]ustody [o]rder of September 19, 2024, since the facts, evidence[,] and record in this matter do not warrant affording [Mother] only periods of supervised partial physical custody of the children, with said custodial periods to be supervised by a professional custody supervisor.

[(5)] Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in entering the [c]ustody [o]rder of September 19, 2024, since the facts, evidence[,] and record in this matter do not warrant requiring [Mother] to wear an electronic monitoring device during her periods of custody with [C]hildren.

[(6)] Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in entering the [c]ustody [o]rder of September 19, 2024, since the [c]ourt did not address the actual dangers to [C]hildren which were testified to in this matter.

[(7)] Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in in not permitting the parties' attorneys to question [C]hildren during the interview process in accordance with Pa.R.C.P. 1915.11(b)(4)(i).

[(8)] Whether the [t]rial [c]ourt erred as a matter of law and/or abused its discretion in not asking [C]hildren during the interview process the written questions submitted by [Mother] in accordance with Pa.R.C.P. 1915.11(b)(4)(ii).

Appellant's Brief, at 4-6.[9]

Mother's first six issues all claim that the trial court abused its discretion by entering the September 19, 2024 custody order. Specifically, Mother contends the court erred where: (1) there was no emergency warranting a modification of the then-existing March 4, 2022 custody order; (2) the facts, evidence, and record, combined with an analysis of the statutory custody factors do not support the order, including awarding Father sole legal custody, granting Mother only supervised partial physical custody, and requiring Mother wear an electronic monitoring device during her custodial periods; and (3) the court's order failed to address the actual dangers to Children. *See* Appellant's Brief, at 4-5.

Our standard and scope of review of custody matters are as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court. When a trial court orders a form of custody, the best interest of the child is paramount. The factors to be considered by a court when awarding custody are set forth at 23 Pa.C.S.[A.] § 5328(a).

_____

[9] Father has not filed a brief on appeal.

***E.R. v. J.N.B.***, 129 A.3d 521, 527 (Pa. Super. 2015) (citations and quotations omitted). Further,

> When deciding a petition to modify custody, a court must conduct a thorough analysis of the best interests of the child based on the relevant [subs]ection 5328(a) factors. All of the factors listed in [sub]section 5328(a) are required to be considered by the trial court when entering a custody order. S[ubs]ection 5337(h) requires courts to consider all relocation factors. The record must be clear on appeal that the trial court considered all the factors.

***A.V. v. S.T.***, 87 A.3d 818, 822-23 (Pa. Super. 2014) (citations and quotations omitted).

Instantly, the trial court found Mother not credible. The court noted that Mother has repeatedly levied unsupported accusations of child abuse against Father. Children have been interviewed multiple times to determine their safety while in Father's custody. ***See*** Trial Court Supplemental Memorandum Opinion, 1/29/25, at 1 ("To say that these parties are litigious is an understatement. . . . These Children have been interviewed many, many times by various judges, Children and Youth Services caseworkers, and other officers of the court. [Judge Engle, alone,] has interviewed the [C]hildren twice in [five] months."). Following those interviews, the court determined that "[b]oth children are happy, bright, well-rounded and adjusted given their milieux between parents [, that t]hey are stable now[, and a]t no point did th[e c]ourt perceive that either child would do harm to themselves or others." Trial Court Opinion, 9/19/24, at 3. Most notably, however, is the fact that **on more than one occasion**, Mother has failed to return Children to Father in Pennsylvania and one time she did so after taking them, without prior notice,

to California. These events forced Father to file emergency petitions due to his credible concern for the safety of Children when they were not returned to his care and he was unable to contact them.

Based on Mother's erratic and unpredictable behaviors, the trial court's decision to grant Father sole legal custody and require that Mother have supervised, partial physical custody with electronic monitoring when she exercises her custodial periods in Pennsylvania is not only warranted but necessary to ensure Children's safety. The raw truth is that Mother cannot be trusted, is not credible, and is a flight risk. *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) ("When a trial court orders a form of custody, the best interest of the child is paramount.") (citation omitted). Based upon the facts of record, we do not find that the court's order was either unreasonable or an error of law. *E.R.*, *supra*.

Mother's final two issues concern the propriety of the court's interview process with Children. Specifically, Mother claims that the court abused its discretion when it did not permit the parties' attorneys to question Children during the interview process, *see* Pa.R.C.P. 1915.11(b)(4)(i), and when the court did not ask Children the written questions Mother submitted in accordance with Pa.R.C.P. 1915.11(b)(4)(ii).

Pennsylvania Rule of Civil Procedure 1915.11(b) provides, in pertinent part:

**(b) Child Interview**

\* \* \*

(4) As part of the interview process, **the court shall permit either**:

> (i) the parties' attorneys to question the child under the court's supervision, provided that all parties are represented by an attorney; or

> (ii) a party's attorney or a self-represented party to submit to the court written questions, which the court **may** include in its interview.

Pa.R.C.P. 1915.11(b)(4)(i)-(ii) (emphasis in original and added).

Pursuant to Rule 1915.11(b), the trial court was obligated **either** to allow the parties' attorneys to question Children **or** to permit the attorneys to submit written questions to the court. Here, where the court permitted Mother to submit written questions, it was not required to use those questions during its interview. **See** Pa.R.C.P. 1915.11(b)(4)(ii) ("the court **may** include [the party's written questions] in its interview") (emphasis added). Thus, while the court solicited questions from the attorneys, it ultimately chose not to use those questions in the interviews. This was entirely permissible. Thus, we find no error of law or abuse of discretion.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 11/18/2025

- 12 -